We are ready for argument now in the case of Consumers Concrete against the Central States Pension Fund. Mr. Sullivan. Good morning, Your Honor, and may it please the Court. I represent Appellants, Central States, and I would like to reserve three minutes of my time for rebuttal if I am able. Your Honor, we are asking the Seventh Circuit today to join the Ninth and Eleventh Circuit in interpreting what I will refer to as Step 2, 29 U.S.C. 1381 B.1.B. In interpreting Step 2 and its reference to Section 1386 as written, meaning that when 1386 is used in Step 2, both Parts A and B are implicated. Again, Your Honor, this is a point that was critical to the holdings in the Ninth Circuit case of Quad Graphics as well as the Eleventh Circuit case in Perfection Bakeries. I would also note that in addition to the plain meaning of the number 1386 as used in Step 2, other provisions of the statute similarly show that when Congress referred to the entire section, it did indeed mean the entire section. If one looks to the next step, B.1.C., or Step 3, Step 3 contains a laser-specific pinpoint-type cite to 1399 C.1.B. stating that the plan administrator should, at Step 3, apply the 20-year limitation of payment. That pinpoint citation is highly relevant because there is nowhere else in 1399, nor anywhere else in the statute, that refers to or rather imposes a 20-year limitation on payments. Thus, we humbly submit that if consumers were correct that 1386 as used in Step 2 was an invitation for plan sponsors to sift through the statute and try and figure out which portion of the statute to apply, The district judge was concerned that if there was no deduction under what I think you're calling Step 2 and what the statute calls next, then there wouldn't be any at all. Neither side seems to be making such an argument. Am I correctly understanding you? I do not believe either side is making such an argument. I think that this is a point that comes through. What in the statute, as the district court saw things in the end, either there's a deduction under next, sub B, or there's a deduction from the final calculation. What in the statute supports that? Maybe I should be asking this more of Mr. Trapp than of you, but I'm just trying to figure out how the parties are setting up the issue to be resolved. Right. So, I will state that, of course, we do think it's Step 2, all that. I know your Honor knows that. I get Step 2 or Step Next. I know you think that's where the deduction goes, but is that the only place? You're not saying that's the only place it can go, and that's something of a puzzle. Oh, I apologize, Your Honor. I am saying that's the only place that it could go. The reason that I believe that is because there's a relationship between 1381A and 1381B. 1381A says that withdrawal liability, in short, withdrawal liability is the amount determined under this part. And then 1381B says for purposes of subsection A, follow these steps. So, when we view those two in conjunction, which is what the Perfection Bakeries Court did, there is a very strong implication that you're supposed to do more or less everything by the time you get to finally, which is Step 4. Mr. Sullivan, I think part of your argument seems to be that with regard to Step 2 or Next, as Judge Easterbrook calls it, that by referencing Section 1386, the statute wants the parties to apply 1386A and B. And I think from there, your argument is, well, it can't – the second step can't only apply in the case of partial withdrawals because that would not implicate Section B of 1886. Is that correct? That is an apt summary, Your Honor. I have a couple of – go ahead. The problem that I have with that is that, in fact, it seems to me 1386B would apply in those cases where there's partial withdrawal because follow me here. Look at the tense of Subpart B, right? It's viewed in the context of the first partial withdrawal. It says, in the case of an employer that has withdrawal liability for partial withdrawal, not in the case of an employer that had withdrawal liability for partial withdrawal from a plan, any withdrawal liability of that employer for a partial or complete withdrawal for that plan in a subsequent plan – again, talking about at the time of the partial withdrawal – shall be reduced in the future in the amount any partial withdrawal liability of the employer with respect to that plan for a previous year. So basically, it seems to me that you are supposed to apply Section B to the first partial withdrawal. What you're supposed to do is just allocate that amount, put it to the side for reference in a subsequent year when there was a complete withdrawal. So I don't understand this kind of notion that Section B of 1386 doesn't apply at all to partial withdrawals because that doesn't seem to me particularly the case given the language of Section B. Because if, under your scenario, Section B would say, in the case of an employer that had partial liability for partial withdrawal, the withdrawal liability of that employer for complete withdrawal from that plan and getting rid of in a subsequent plan year would say, shall be reduced by the amount any partial withdrawal liability. But it doesn't say that, right? And so it's thinking about what do we do with this amount of partial withdrawal in the future, a.k.a. applying Subsection B to the year of the partial withdrawal. So why isn't that applying 1386 completely? I understand the argument, I believe. I think this was also mentioned in the dissent in the Eleventh Circuit opinion in Perfection Bakeries. I think that is the version of the statute that the dissenting judge there puts forth. I have a couple of specific responses to your iteration, and then I'll turn briefly to the dissent itself. First, I do recognize has and had are different tenses of the verb to have. That is correct. That said, I would direct the court to the decision in the super value case, which we discuss a bit in our reply. Specifically, that case makes clear that withdrawal liability can have multiple senses and multiple meanings. In that sense, Your Honor, I believe that strictly applying has versus had in that way that you described in your hypothetical wouldn't hold water because an employer who had withdrawal liability still has withdrawal liability as the payment schedule goes on. I mean, we're usually talking, and in this case, in fact, we're talking about a 20-year payment schedule. Well, what about the words in a subsequent year? I do acknowledge that there is a relation between one year and the other year here. However, as the Eleventh Circuit majority ultimately found, it's equally plausible to view that relation as going in the other direction, as in you start in the- So if it's equally plausible, then the argument that you set forth, your reliance upon the phrase Section 1986, saying that that has to mean that the second part must deal with complete liability, is just basically an equally plausible reading as the other. Only as to that specific issue, Your Honor. But that is the issue because the crux of your argument with regard to Section of Step 2 is that, is that because you have to apply the entirety of 1386, that ergo the second step has to apply to complete withdrawal. I understand. Let me rephrase, Your Honor. The issue there is that if it were indeed correct that at a partial withdrawal, I think the word the dissent used in the Eleventh Circuit was book. You know, you set a reminder. That actually doesn't hold up with the next, then, finally structure. Because if it's at Step 2 that you book future withdrawal liability, you've not actually fully calculated the withdrawal liability under 1381b1. It's strange to me the idea that this commands you to remind yourself to book the credit, which is based off of something that you don't know until you get to the finaling stage. So that's the other aspect. I was simply speaking as to the grammar, but I think if you look at the statute as a whole, I don't think that reading holds water. So I'd like to just touch on this, Your Honor. I have a question about the state of litigation. Yes, Your Honor. Has this question pending in any other circuit? We know the Ninth and the Eleventh have decided it. To my knowledge, it is not. I do believe that Mr. Trapp's client in Perfection Bakeries has filed a petition for a writ of certiorari in the Eleventh Circuit case. Other than that, I am not aware of any other higher court proceedings on this question. Did either the Department of Labor or the Pension Benefit Guarantee Corporation file an amicus brief in the Ninth or Eleventh Circuits? I do not believe that they did, Your Honor, no. Do you think we should ask them to file in this case? No, Your Honor. I believe that under Loper-Bright in particular, I think that additional views of the corporation would be only at the partners' level. No one is arguing for a resurrection of Chevron. Of course. But Loper-Bright says that the courts should take careful note of any intelligent arguments advanced by the executive branch. And this is a subject one might think of within the administration for many purposes of the executive branch. With all due respect— If we don't ask, the Supreme Court is bountiful. I agree with that as well, Your Honor. We cannot resolve either the Ninth or the Eleventh Circuit case without asking the Solicitor General for his views. I agree with that, Your Honor. And, of course, it's the court's prerogative. But my position would be that this issue has percolated significantly with parties that are sophisticated and have every incentive to apply every issue and look at every aspect of the statute. I am at the time that I'd wish to reserve. Certainly. So I'd like to sit down unless anyone has any more questions. What's the status of the cert petition? I defer to Mr. Trapp on that. I believe— I'll ask him. I believe a reply was filed maybe a week ago, and I do not believe the conference has taken place. Thank you. Okay. Thank you, Your Honor. Thank you. Mr. Trapp. Thank you, Your Honor. May it please the Court. My name is Mark Trapp, and I represent Consumers Concrete, the appellee in this matter. The Court should decide this case by applying the most basic of all the canons of statutory construction, the principle that different words mean different things. The Fund's arguments violate that maxim, rendering its position clearly erroneous, as the Pension Benefit Guarantee Corporation declared more than 40 years ago when asked about this exact matter. I'm not sure that anything the Pension Benefit Guarantee Corporation said more than 40 years ago counts for beans. That was before Justice Scalia was appointed and the Supreme Court became textualist, right? Let me ask you the question that I asked Mr. Sullivan. Has the corporation or the Department of Labor filed an amicus brief in any of these new cases, the 9th or the 11th? It has not, Your Honor. When I filed the petition with the Supreme Court, I have asked, or at least mentioned to the Supreme Court, you might consider calling for the views of the solicitors. Of course, they might simply deny the petition because there's no conflict so far. Correct. It's obviously my hope that they don't do that, but I'm hoping that at the bare minimum they do ask the federal government, the executive branch, for its views. This is a highly technical statutory issue, which some justices love and some do not. They might feel better if they had three circuits. Who knows? They might feel better if they had the views of the responsible agencies. Yes, Your Honor. And I guess depending on which way it goes, I might feel better about three circuits as well. I do want to focus, though, Your Honor, on the colloquy that the court just had with Mr. Sullivan. The fund's entire position, to me, seems to boil down to this idea that both parts, and that's repeated throughout the brief, both parts of Section 1386 must apply. The entire section must apply. And that was repeated here from this lectern. But our reading, as Judge Lee pointed out, is the only one that actually applies both parts here for the reasons that Judge Lee and that Judge Brasher pointed out in the dissent and perfection bakeries state. That phrase, in the case of an employer that has withdrawal liability for a partial withdrawal, and we could talk about whatever words you want to use, book or bookmark or whatever, but that's really just a reminder that when you're calculating a partial withdrawal, which is the only time that you're in the second adjustment anyway, based on 1381B1B, that language says in the case of a partial withdrawal, so you're never even going to 1386 unless you have a partial withdrawal. And in A, it goes through the steps and even reiterates the order of operations fully and completely all within A. Now that you're in Section 1386, however, you glance down the page and you see Section B. And it says in the case of an employer that has current tense partial withdrawal liability, you book a credit against any subsequent withdrawal. And it says for partial or complete, which removes it from the phrase in the case of a partial withdrawal that's in 1381B1B. And in fact, the fund in this case, I think I made this point in the brief. In this case, the fund did that very thing because it knew to apply a credit when it calculated the complete withdrawal liability in 2019, two years later. Where did that come from if the fund didn't book the credit for the partial withdrawal? I'm sorry, I thought I heard something. The fund insists on applying both parts, but they never actually apply both parts. This is a complete withdrawal, and they applied the second step despite the fact that it says in the case of a partial withdrawal. And then they stipulate, and this is in paragraph 45 of the stipulations, which are at 21-1 of the record before the district court. They stipulated that part A, subsection A of 1386, was not applicable because they were calculating a complete withdrawal. Now, I'm not the world's foremost expert on reading statutes, but it seems to me odd that you apply a complete withdrawal in a phrase that says in the case of a partial withdrawal, and then immediately skip over the section that obviously applies to every partial withdrawal. And in fact, the testimony was to that effect from the fund itself, that it always applies section 1386 in a partial withdrawal and never applies it in a complete withdrawal. That testimony is not dispositive because we're talking about statutory language here, but it shows that in practice, the fund reads this exactly the way that it should. And it skips over the partial withdrawal prorate fraction in 1386A when it's convenient to do so. If in the case of a partial withdrawal actually included a complete withdrawal, they could go ahead and apply the partial prorate fraction, but they don't. Mr. Trepp, what is your response to Mr. Sullivan's argument that he made in the briefs that under 1381A, it specifically says that the withdrawal liability is the amount determined under this part, meaning 1381. In other words, you have to go through all of these steps, and that leads one to the conclusion that when you do that deduction for prior partial withdrawal credit, you have to do it kind of as part of this process before you get to the 20-year-old cap. Sure, Your Honor. And if you'll bear with me on this, I want to back up just a little bit when I answer that. Because 1381A does say when there's an employer that is withdrawn in a partial or complete withdrawal, then they will owe withdrawal liability. The employer is liable for the withdrawal liability calculated in this part. Right below that, the very next phrase in B says, for the purposes of subsection A, and it makes clear, hey, the whole point that we're going to do here in B is calculate the withdrawal liability that was referred to in A. And if you go through those steps, all of those are adjustments to the allocable amount of unfunded vested benefits in order to reach withdrawal liability. And that buttresses our other point, which is that different words mean different things, and 1386B.1 specifically says that you reduce withdrawal liability, not as every other of the uncontested four adjustments that are not contested by any of the parties. All of those specifically state that they apply to the allocable amount of unfunded vested benefits and or the amount determined under Section 1391, which is the exact same thing, just referencing the statute. And I'll back up even further than that, Your Honor, and say, if you back up to the calculation of the unfunded vested benefits as a whole by the plan, which is under 1393, in A and B of that section, it references the calculation of unfunded vested benefits, and it says for the purposes of determining an employer's withdrawal liability. So to frame this entire issue, the only reason you're calculating the unfunded vested benefits here is as a tool to determine the employer's withdrawal liability. Then once you've calculated the full amount under 1393, you have to allocate a portion of those unfunded vested benefits. You go to 1391. 1391 in 1391A says specifically the allocable amount of unfunded vested benefits for an employer is determined under, and it's a couple different methods that a plan can choose from. Now that you've allocated that amount, now you go to 1381B, which says for the purposes of A, for the purposes of determining withdrawal liability for which an employer is liable. Remember, nowhere in the statute is an employer liable for unfunded vested benefits. That only occurs in a mass withdrawal, and it's stipulated in paragraph 10 of the stipulations that that's not the case here. So you're only liable for withdrawal liability, and once you've determined the unfunded vested benefits as a whole, allocated a share of that. I wish I had played this up a little bit more in my brief, honestly, Your Honor, because I think we've bought into this framework of four adjustments, and that's your withdrawal liability. But that's only after the two earlier calculations have already taken place, and 1393 specifically says for purposes of determining an employer's withdrawal liability. That's the whole reason we're calculating. It's almost like a rocket booster that will get you into space and then falls away. That's what unfunded vested benefits are doing here. They're getting you into the land of like, okay, now we're going to determine withdrawal liability, but then you allocate a share of those, so some of the unfunded benefits fall away. Then once you've allocated them in 1381b.1, it specifically says the withdrawal liability of an employer is the amount determined under section 1391 adjusted. And now is where you get into the four specific adjustments that, Your Honor, Judge Easterbrook, you mentioned the first, next, then finally. And only at the end of that process have you now winnowed down these allocable amount of unfunded vested benefits to withdrawal liability. That's where the credit is applied. It's a below-the-line, not above-the-line deduction. That was kind of a long-winded answer, I guess, but once I get going on this stuff, it's kind of hard to shut me up sometimes. I would also point out that this idea of applying both parts that the fund is fixated on falls short because 1386a all by itself contains the second adjustment. It sets forth that for a partial withdrawal, you start with the amount under section 1391 as adjusted under 1389, which is the very first adjustment. And it states that this is before 1399c1 and 1405, which we know are the third and fourth adjustments. It leaves that little space open for the second adjustment, which it is. And it specifically states that the amount that's determined by that product that's a, you know, this is all mathematical formulations, so it's a miracle that I can ever keep up with it. But that formulation that's in 1386a is the amount of the second adjustment. And the reason you know that is because it says that it's equal to that amount, and it's before the third step. So the amount before the third step is generated and calculated entirely under 1386a. Period, end of story. If you add or subtract anything else to it, it will no longer be equal to the amount before the third adjustment. And it's interesting, and I do want to point out that the fund, nowhere in its brief, and in all the briefing in this, they've always studiously avoided this issue. But if in the case of a partial withdrawal actually applies to a complete withdrawal, it's funny that the fund doesn't care to apply it in the third step. Because it also applies in the calculation of the third step in the annual payment. In 1399c1e, it says in the case of a partial withdrawal, the annual payment will be adjusted. And guess what? It's adjusted by the partial pro-rate fraction, and it specifically says under 1386b, or sorry, 1386a2. That means that it assumes that there is a calculation that has already occurred under 1386a2 when there's a partial withdrawal. But again, this was a complete withdrawal, which is stipulated by the fund, and it's not a partial withdrawal. So they have no business being in 1386 in the first place. But when they go there, it's interesting that they skip over the two things that apply and that Congress wrote would apply in the statute in every partial withdrawal. One, the partial pro-rate will be calculated and applied at 1386a. And two, that same exact fraction will apply to reduce the annual payment in step three under 1399c1e. Neither of those things happened here, and I think that's indicative that this was not a true partial withdrawal. And that's my position, and that's the position of the dissent in Perfection Bakeries. I will address just briefly, Judge Easterbrook, your point about calling for the views of the PBGC. I'd welcome that, and if they want to say something about it, that's perfectly fine with me. And they did just recently, they went through the opinion letters, and there was an article in Law 360 about this that they said, we went through all the opinion letters and made clear which ones apply and which don't, and they updated their website. PBGC opinion letter 85-4 is still enforced by the PBGC. Perfection Bakeries is on the Supreme Court conference for April 17, so perhaps we will hear then whether the Solicitor General has been invited to participate. That's correct, Your Honor. I would just say thank you for your time, Your Honor. Thank you very much. Mr. Sullivan, anything further? Yes, Your Honor. I will be brief as befitting the time. Judge Lee, we had a colloquy about B-1. I have a slightly better or more complete answer for you. I respectfully direct the Court to subsection B-2. The next section makes clear that the PBGC is to promulgate some regulations that apply changes after the year of the partial withdrawal to the amount of the partial withdrawal credit. That indicates that the view is ultimately back-looking, that you are supposed to take into account events that happen after the year of partial withdrawal to account for changes in the UVBs. This is loosely covered in the Safeway opinion, so I won't go into it too much here. The other thing I'd like to talk about is this idea under the four steps that Mr. Trapp described in terms of a rocket falling away. We disagree with that, of course, but it's also, we believe, not correct. As we've stated in the super value decision, there is an acknowledgement that these UVBs do not go away just because they are not subject to the payment schedule. We have also described in our briefing on reply that comparison of 1399 C-4 to C-5 shows that there is a difference between withdrawal liability and the withdrawal liability subject to the payment schedule. I'd also like to just briefly address Mr. Trapp's point regarding 1399 C-1E. That's the provision that applies the partial pro-rate fraction to the annual payment amount. This provision is actually very informative because it is the only place in the statute where there is a pinpoint laser focus site of the type that we see in what I've called Step 3. Specifically, it says use the fraction that you see in 1386 A-2. This is the same principle whereby the Congress did not need to be so specific in a precise citation there, and therefore the contrast between that specific reference and the more general reference in Step 2 is informative. Unless there are any questions, Your Honors, thank you very much. Thank you, Counsel. Case is taken under advisement.